J-S02025-17

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|
| Appellee | |
| v. | |
| EDDIE TATE | |
| Appellant | No. 1180 EDA 2016 |

Appeal from the PCRA Order March 30, 2016
In the Court of Common Pleas of Delaware County
Criminal Division at No: CP-23-CR-0004358-2012

BEFORE: FORD ELLIOTT, P.J.E., STABILE, and MOULTON, JJ.

MEMORANDUM BY STABILE, J.:                    **FILED APRIL 13, 2017**

Appellant, Eddie Tate, appeals *pro se* from the March 30, 2016 order entered in the Court of Common Pleas of Delaware County ("PCRA court") dismissing his petition pursuant to the Post Conviction Relief Act ("PCRA"), 42 Pa.C.S.A. §§ 9541-46. Upon review, we affirm.

The PCRA court summarized the factual history of the case as follows.

> At 6:25 a.m. on September 13, 2008, while waiting at a bus stop, Ms. Nicole Scott saw two African American men, one wearing a dark hooded sweatshirt and the other wearing a white hooded sweatshirt, walking down Church Lane from the direction of Redwood Avenue in Yeadon Borough, Delaware County, Pa. She watched them cross the street diagonally and turn into the driveway of 645 Church Lane where she lost sight of them. At 6:45 a.m. Ms. Scott heard two gunshots coming from that direction and saw the two males quickly run out of the driveway back towards Redwood Avenue. About ten minutes later, police found Veno Leigertwood, Jr. dead in the driveway of his home. The cause of death was a single gunshot wound to the back of the neck from a .22 caliber handgun. Although the victim's

wallet, laptop, computer accessories, and car were left at the scene, his cell phone and pocket Bible were missing.

The Yeadon Borough Police Department and the Delaware County Criminal Investigation Division initiated a homicide investigation that was joined by the Federal Bureau of Investigation (FBI) in February 2010. Initially, the investigation focused on Mr. Leigertwood's wife, Ms. Raven Leigertwood. However, in the summer of 2010, the focus shifted to Mr. Braheim Thompson. As a result of the FBI's investigation of Mr. Thompson, it was revealed that he had a close friend named Eddie Tate, whom the FBI decided to interview based upon this relationship.

The FBI first interviewed Appellant about Mr. Leigertwood's death on February 18, 2011. During that interview, Appellant told officials that a man named Marquis Robinson[1] [FN1: "Marquis Robinson" was later correctly identified as Mr. Marquis Roberts] had bragged "to the neighborhood that he had shot" Mr. Leigertwood. Appellant claimed that Mr. Roberts "had said that he stuck a gun in Veno's face trying to rob him and that the victim punched him and when he punched him he . . . shot him a few times." Appellant also indicated that Mr. Roberts had stolen a cell phone and a laptop from the victim. Finally, Appellant told officials that Mr. Roberts had shot Mr. Leigertwood with either a .22 or .25 caliber, small, black handgun.

The FBI conducted a second interview of Appellant on July 22, 2011. During this interview, Appellant told officials "that he was in a car with Marquis Roberts and Braheim Thompson when Braheim and Marquis were having a conversation about the murder [of Mr. Leigertwood], and . . . Mr. Tate deduced from listening to the two of them talk . . . that they had . . . shot Veno in the course of a robbery." Appellant also revealed that Mr. Roberts and Mr. Thompson had previously committed other robberies and that when they did so, Mr. Roberts wore a white zip-up hooded sweatshirt while Mr. Thomspon wore a black hooded sweatshirt. However, Appellant averred that despite knowing about the murder, he was not present when Mr. Leigertwood was shot.

Appellant was interviewed a third time by Special Agent Thomas Scanzano on July 27, 2011. At this time, Mr. Thompson and Mr. Roberts were both suspects in the case, but Appellant was being interviewed as "a possible cooperating witness."

Agent Scanzano testified that before the interview, he placed his laptop, which was displaying an electronic version of the standard *Miranda* form, in front of Appellant and directed him to read through it. Appellant acknowledged that he understood and was waiving his *Miranda* rights by signing an electronic signature pad. When asked what he knew about Mr. Leigertwood's murder, initially Appellant repeated that he heard about the robbery/murder from Mr. Thompson and Mr. Roberts a few days after it took place. He maintained that he was not present for and did not participate in the murder.

However, after observing that when these questions were asked Appellant's shoulders slumped and he broke eye contact, Agent Scanzano said, "Eddie it's obvious to me that you're not telling the truth . . . We just need to get to the truth." Appellant then confessed that he was lying and "afraid to tell the truth because he could be charged in the murder or conspiracy to commit murder." When prompted to explain, Appellant stated that on the morning of Setpember 13, 2008, he was driving around Yeadon with Mr. Roberts and Mr. Thompson "looking for someone to rob." Appellant said he stopped the car when they saw Mr. Leigertwood, and Mr. Roberts and Mr. Thomspon exited the vehicle. Appellant said he could tell there was an altercation and then heard multiple gun shots, after which Mr. Roberts and Mr. Thomspon immediately ran back to the car. All three men then went back to Appellant's apartment, where "Mr. Roberts said that he pulled out a gun, attempted to rob the black male, the black male punched him in the face, and as he was falling backwards he shot the black male multiple times." Appellant stated that the men concluded that Mr. Leigertwood was likely dead. Finally, Appellant told Agent Scanzano that the victim's cell phone was stolen and that Mr. Roberts had used either a .22 or .25 caliber black handgun, but he did not know what happened to either of those items.

When he had concluded his interview, Agent Scanzano asked Appellant if he would be willing to speak to Agent Carter and Detective Benham, and Appellant agreed. Agent Carter testified that both he and Detective Benham first verbally reminded Appellant of his *Miranda* rights, which Appellant chose not to invoke. Appellant repeated the story he had told Agent Scanzano, adding that before stopping the car to let Mr. Roberts and Mr. Thompson out, he made a right turn onto the next street past Mr. Leigertwood's driveway. Detective Benham testified

that this street is Redwood Avenue, which corroborated the earlier testimony of Ms. Scott. According to Agent Carter's testimony, the only inconsistency between Appellant's July 27 statements concerned where the discussion after the shooting took place, since he indicated to Agent Scanzano that the conversation took place in his apartment, but told Agent Carter it occurred while the men were still in the car.

PCRA Court Opinion, 7/15/16, at 1-5 (citations and footnote 2 omitted).

Following a jury trial held from February 26, 2013, through March 1, 2013, Appellant was convicted of murder in the second degree, robbery, and conspiracy to commit robbery. On April 2, 2013, Appellant was sentenced to life without the possibility of parole for murder in the second degree and a consecutive term of imprisonment on the conspiracy to commit robbery charge. Following a direct appeal, this Court affirmed Appellant's judgment of sentence on August 15, 2014. *See Commonwealth v. Tate*, 1404 EDA 2013, unpublished memorandum at 17 (Pa. Super. filed August 15, 2014). On January 8, 2015, our Supreme Court denied Appellant's petition for allowance of appeal.

On June 4, 2015, Appellant filed a timely *pro se* PCRA petition along with a memorandum of law. On June 23, 2015, the PCRA court appointed Henry Dibendetto Forrest, Esq., as counsel for Appellant. Following multiple extensions of time to file an amended PCRA petition, Attorney Forrest filed a no merit letter and application to withdraw pursuant to *Commonweatlh v. Turner*, 544 A.2d 927 (Pa. 1988) and *Commonwealth v. Finley*, 550 A.2d 213 (Pa. Super. 1988) (*en banc*) on February 17, 2016. The PCRA court granted counsel's application to withdraw and issued a Rule 907 notice on

February 22, 2016. Appellant filed a *pro se* objection letter on March 11, 2016. On March 31, 2016, the PCRA court dismissed Appellant's PCRA petition. Appellant field a timely notice of appeal on April 18, 2016. The PCRA court did not direct Appellant's compliance with Pa.R.A.P. 1925 but filed an opinion pursuant to 1925(a) on July 5, 2016.

On appeal, Appellant raises seven issues, which we quote verbatim.

I.  Whether the trial court abused its discretion or committed an error of law in finding that the commonwealth met its heavy burden of proving that petitioner knowingly and intelligently waived his ***Miranda*** rights and that the waiver was made with the full awareness of both the rights being abandon and the consequence thereof[.]

II.  Whether the trial court abused its discretion or committed an error of law in failing to find that [Appellant] was deceived into waiving his rights trough manipulative methods[.]

III.  Whether the trial court abused its discretion or committed an error of law in failing to find that the interrogating officer violated [Appellant's] Fifth Amendment right by undermining the procedural safeguards established in ***Miranda v. Arizona***[.]

IV.  Whether the trial court abused its discretion or committed an error of law by allowing for the introduction of a secondary copy of [Appellant's] waiver to be admitted into evidence at trial[.]

V.  Whether the trial court abused its discretion or committed an error of law by failing to find that [Appellant's] transfer from a state correctional institution to a federal detention center amounted to the functional equivalent of an arrest which was not supported by probable cause[.]

VI.  Whether the trial court abused its discretion or committed an error of law by failing to find that [Appellant's] Due Process right guaranteed by the Fourteenth Amendment

was violated were there was no judicial proceeding to determine the voluntariness of the confession admitted into evidence at trial[.]

VII.     Whether the trial court abused its discretion or committed an error of law by failing to find that [Appellant's] *Miranda* rights were violated were prior to being questioned [Appellant] was never advised of his right against self-incrimination[.]

Appellant's Brief at 4-5 (emphasis added) (sic).

Appellant's claims either are waived or have been previously litigated and therefore, no relief is warranted. Appellant's *Miranda* claims involve a "[a] violation of the Constitution of this Commonwealth or the Constitution or laws of the United States which, in the circumstances of the particular case, so undermined the truth-determining process that no reliable adjudication of guilt or innocence could have taken place." 42 Pa.C.S.A. § 9543(a)(2)(i). However, in order to be eligible for relief, the allegation of error must not have been previously litigated or waived. 42 Pa.C.S.A. § 9543(a)(3). In his direct appeal, Appellant raised the same *Miranda* issues, and this Court affirmed his judgment of sentence; therefore, Appellant is not eligible for relief on his *Miranda* claims. *See Tate*, 1404 EDA 2013, Unpublished Memorandum at 6-12. We note that on direct appeal Appellant did not challenge the content of the warnings; however, his failure to litigate that at the time of his direct appeal results in waiver. *See* 42 Pa.C.S.A. §§ 9543(a)(3), 9544.

Appellant's only claim that does not implicate *Miranda* is that the trial court's transfer of Appellant to a federal detention center was the functional

- 6 -

equivalent of arrest and was done without probable cause in violation of his Fourth Amendment rights. Appellant's argument is meritless. It is well established that an administrative transfer does not implicate rights under the Fourth Amendment as the subject is already lawfully in custody. *See Commonwealth v. Bomar*, 826 A.2d 831, 846 (Pa. 2003). Appellant's claim fails.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 4/13/2017